In the matter of JOHN S. MARTIN, AMALGAMATED CLOTHING WORKERS OF AMERICA, BRUNO BELLIA, JOHN SALA, also known as JOSEPH SALA, also known as JOE SCALA, IGNAZIO PULLARO, TONY SCARPINI and SALVATORE LOPRESTI, charged with contempt of an injunctive order of the court of chancery granted in the cause of "Sigmund Eisner Company, a corporation, complainant, v. Amalgamated Clothing Workers of America et al., defendants."

[Decided February 27th, 1934.]

Mr. *Richard M. Stout* (*Mr. William J. O'Hagan*), for the defendants.

Mr. *Merritt Lane,* for the court.

BERRY, V. C. (Orally.)

This is a proceeding in the nature of a criminal contempt growing out of the issuance of an order to show cause in the suit of Sigmund Eisner Company against Amalgamated Clothing Workers of America and others, and which order to show cause was advised by Vice-Chancellor Stein, and imposed certain restraints upon the defendants and those acting in concert with them. That order was advised on the 23d day of August, 1933. On the 28th day of August, and after service of the order to show cause containing the injunctive restraint, proceedings in contempt were instituted in this court against the respondents in this proceeding, and numerous other respondents, alleging violation of the restraints imposed by the order to show cause. Orders to show cause why the respondents in those petitions should not be adjudged in contempt of court were issued and served. Apparently little attention was paid, either to the original order to show cause or the orders to show cause issued in the first contempt proceeding, because two days later, the present proceeding was instituted and six of the so-called strikers, or representatives of the Amalgamated Clothing Workers of America, and the Alamgamated itself, were charged with violation of the re-

straints imposed by the original order to show cause, notwithstanding the fact that the same parties were already under charge of having previously violated that order.

This is a criminal proceeding The contempt charge, if it is proved, is a criminal offense. It is because of the nature of the offense charged and the seriousness of the matter, not only to this community but to the State of New Jersey and to the country at large, and of the consequences which might result to the respondents themselves, from a conviction upon the charges, that I have allowed the widest latitude possible in the presentation of the defense, and particularly is what I have said applicable to the latitude allowed counsel in his remarks here this morning. I may say, however, that I was perfectly amazed that any officer of this court should advance as an argument against a conviction in this cause, some of the arguments which were voiced here to-day. It is only because of the nature of this proceeding that I permitted him to continue. Apparently, and this is the only excuse that can be offered for the advancing of such arguments, counsel has entirely misconceived the nature of the proceeding and the issue. The issue here is not the rights of employer and employe as related to each other; it is not the rights of the respondents to exercise any assumed or fancied rights under the N. R. A.; but the issue is plain, and stands out boldly, and is only this: Has the order of this court been violated to such an extent as constitutes a contempt of the court and its processes? That is the only issue here. Whether or not the original order to show cause was rightly issued—and I think it was—or whether it contained restraints broader than the circumstances warranted—and I think it did not—is entirely beside the question.

This court is an arm of the state government. Our government is divided into three separate and distinct branches, the executive, the legislative and the judicial. Neither of those branches has any right to encroach upon the prerogatives of the other. This court is of the judicial branch of the government. Courts are not servants of the people. The legislature may be said to be, in a sense, the servant of the people. The executive, to a degree, may also be said to be the same, but

to a less degree than the legislative branch of the government; but the judicial branch of the government is an arbiter of disputes between citizens, or of disputes which may arise between citizens and the government itself. If orderly government is to continue, then the judicial branch of that government and its processess must be respected; otherwise anarchy will prevail. It is not only the person who presides in a court who stands back, or who should stand back of its decrees; it is the entire government of the state itself, and all the power of that government, wherever it rests, because this court may call upon, if necessary, the entire forces of the government to carry out such decrees. It is important, therefore, if orderly government is to continue, that the orders and decrees of this court must be respected and obeyed. Because that is so, I say that the issue here is not whether the original order issued was providently issued, or whether the restraints imposed were broader than they should have been. Orderly procedure demanded, if there was any such thought in the minds of respondents or of counsel, that prompt application be made to the court to modify its previous order. No such application was made. The order stands to-day as it was issued, and has been continuously in force from the date of its issue.

The law of this state has been laid down repeatedly by this court and the court of errors and appeals, so that no person need be ignorant of his or her rights in matters of this kind.

Let me say now, in terms which may not be misunderstood, that the N. R. A. legislation does not in the least affect the law of this state as previously laid down in our decisions, neither statute law nor the law as expounded by the courts themselves; nor could it. This is a constitutional government, and the laws which are enacted must conform to the provisions of our constitution. If not, they are nugatory. But no additional rights have been granted to labor by the N. R. A. which would authorize or justify in any degree the threats and acts of intimidation and violence complained of here. So much for the issues and the position which this court must assume.

That brings me to the question of the guilt or innocence

of the respondents to this proceeding. As to some of the respondents, no defense whatever is interposed. The Amalgamated Clothing Workers of America presents no defense; it is not even represented here in this proceeding. The respondent Sala did not take the witness stand to deny any of the charges against him; nor did the respondent Lopresti. The respondents Martin, Bellia, Pullaro and Scarpini did take the witness stand, but none of them denied some of the charges in the petition. The only charges which have been denied by any of these respondents, except Martin, are the charges of actual violence or the creating of any disturbance, a very small part of the charges which have been preferred. The main charge forming the basis of this proceeding is the violation of that portion of the restraining order which prohibited picketing in and about and around or near the factory of the complainant in the original cause. By their failure to deny such charges, those respondents who took the witness stand must be taken as having admitted the truth of the testimony offered on behalf of the prosecutors in this proceeding. The testimony with respect to that portion of the charges is overwhelmingly in support of them, and they must be taken to have been proved with respect to all of the respondents except Martin, as to whom I shall have something to say in a moment. It would be a waste of time for me to recount and repeat in detail the testimony which has been given in support of the charges of violation of the court's order. I shall not attempt to do so. The record speaks for itself.

With respect to the respondent Martin, the only charge against him which finds any basis in the supporting testimony or in the evidence submitted on behalf of the prosecutors, is that he acted in concert with the picketers and those who were in charge, and directed it. When he took the stand in his own defense, his testimony was such, and I think by design, as would create the impression that he was merely an onlooker and had nothing to do, particularly with this affair, except in the capacity of a publicity agent. My own examination of him on the witness stand convinced me that he was nothing of the kind. In fact, he admitted that he was one of the principals in advising the so-called strike, and he was

undoubtedly one of the men back of the activities of the so-called strikers and directing their movements. But the only charge which has any basis in the evidence in this proceeding is that he violated the order with respect to picketing. The only testimony, as I recall it, to that effect was the testimony of Mr. Greenblatt. My own examination of Mr. Greenblatt finally placed Mr. Martin at a position some two hundred feet away from the picket line, and while the circumstances are suspicious, and while I might perhaps be justified in assuming that his purpose in being there was to aid in the direction of the activities of the so-called strikers, yet there is some doubt in my mind, and as this is a criminal proceeding, I am obliged to give him the benefit of that doubt. I therefore pronounce the respondent Martin not guilty of the charges preferred against him in this proceeding.

I pronounce all of the other respondents guilty.

I do not propose at this time to impose sentence on these respondents because there are other contempt proceedings here to be disposed of, but those respondents whom I now pronounce guilty will stand at the bar and will not depart this court without leave.

John Sala (takes position at bar).

Bruno Bellia (takes position at bar).

Ignazio Pullaro (takes position at bar).

Tony Scarpini (takes position at bar).

Salvatore Lopresti (takes position at bar).

The Amalgamated Clothing Workers of America, not being present or represented, cannot very well stand at the bar.

You five men have been adjudged guilty of contempt of this court, and you will be required pending the imposition of sentence, to post bail. You will, therefore, not depart from this court room without special leave of the court, and you are now placed in the custody of the sergeant-at-arms. The amount of bail to be fixed will be the same amount of bail as was fixed in the attachment with respect to each of you, which was issued in this proceeding.

The respondents Bellia and Sala are required to furnish bail in the sum of $2,500 each.

The respondents Lopresti, Scarpini and Pullaro, $1,000 each.

You may furnish that bail at any time during the day, and you will be allowed a reasonable opportunity to procure such bail. The sergeant-at-arms will arrange with you, if necessary, for you to leave here in the custody of an officer, if it is necessary for you to leave here for that purpose, and you may furnish the bail any time during the day.

September 11th, 1933.

The respondents being called to the bar for sentence on September 14th, 1933, the court made the following statement:

The court: The duty which now devolves upon me is, I think, perhaps the most unpleasant duty I have had to perform since I have had the honor of sitting in this court. I perform that duty, not reluctantly, but regretfully.

We can all recall that when we were children it was sometimes necessary for our parents to take disciplinary measures with us and punish us for violations of rules of conduct laid down by them, or rebellious conduct indicating a challenge of their authority. We now are but grown-up children. The punishment which was imposed upon us as children by our parents was not imposed in any spirit of vindictiveness or with any desire to punish for the sake of punishing, but merely that we as children might be better children and learn to recognize and obey the authority of the parent.

I do not suggest that I to-day stand in the position of a parent toward you men, or that you occupy the position of children, speaking as an individual; but the court does, in a measure, occupy that position; and you, as respondents convicted of having challenged the authority of the parent or court, stand in the position of rebellious children. It is not with any spirit of vindictiveness that I now undertake to perform the duty which is cast upon me by the law. I perform that duty, as I have already said, regretfully but not reluctantly. And so the parent, in the punishment of his children, performs his duty, not reluctantly, but regretfully, and yet with a determination that the parental authority shall be recognized and obeyed. It is with that same deter-

mination that the lawful authority of this court, and of the government of which this court is a part, shall be recognized, and the rules of conduct laid down by it shall be obeyed, that I now perform the duty cast upon me by the law.

It is particularly difficult to perform such duty in matters of this kind, especially where those at the bar are of foreign birth, and may not, despite the years that they have lived here, thoroughly understand the nature of the government of their adoption. This government is not a government of men, but a government of laws. In a despotism, a despotic government, the laws are made by the individual monarch for his own benefit, the protection of his rights and the subjugation of his subjects; but in a republic such as that in which you live, and of which you are adopted citizens, the laws are made for the protection of your rights and those of your fellow citizens. But all rights of the individual are relative, not as in a despotic government, absolute; and the rights of one citizen must be measured and modified by those of others. Despite the fact that all of you men have resided in this country for more than a score of years, I doubt whether all of you yet understand the principles of the government of your adoption, or the rights of the citizens of this republic. It is because of that question which is in my mind that the punishment which I am about to impose will perhaps be more tempered with mercy than is warranted by the circumstances of this case. But Montesquieu, in his great work "The Spirit of the Law," has said that "the severity of punishments is fitter for despotic governments, whose principle is terror, than for a monarchy or a republic, whose spring is honor and virtue." And I would rather err on the side of leniency than severity.

So, in meting out sentence to you men to-day, it is not my purpose to measure that sentence in terms of terror or fears, but rather in terms of discipline which may produce that virtue which constitutes good citizenship.

I regret that nowhere in this proceeding has there been the slightest indication on the part of any one of you of any regret for the disobedience of the orders of this court. The contumely which you showed to the court by the violation of

its order you have contined to exhibit here in this court room. The authority of this court has been challenged by you up to this very moment, without any words of explanation or mitigation and without any sign of repentence; without any sign of compunction, and without any suggestion of an apology for what you have done. Under these circumstances, I can but assume that your attitude to-day is exactly the same as that taken by you when the original restraining order which you have been convicted of violating was served upon you. This is cause for regret.

In every moment of this kind there are always those who take the lead and those who follow like sheep following the shepherd; and so, in this case, there were leaders in the attitude of contempt assumed by those who violated the restraining order of this court, and there were followers who followed like dumb animals, and perhaps without any clear understanding of the purpose of their following or of the reasons lying back of it. Two of these leaders stand before me to-day convicted of having challenged the authority of this court and disobeyed its decree. They, too, I think, had leaders, but unfortunately those leaders are not here. They were wise enough to keep out of the jurisdiction of this court and use you, Mr. Sala and Mr. Bellia, as catspaws in their game, as you, too, have used these other three men who stand beside you as catspaws in your game. It is you, Mr. Sala and Mr. Bellia, who must bear the brunt of the punishment which is to be imposed this morning, because you were the leaders, the inciters, the men who stood back of this disobedience on the part of the other three, who are behind the challenge of the authority of this court, and when I speak of the authority of this court I mean the authority of the government itself under which you live. You others, Pullaro, Lopresti and Scarpini, although you have shown no spirit of regret or contrition, and no disposition even now to recognize the authority of the government under which you live, are not as blamable as your leaders, because I believe your understanding is less, and that you have been led astray, in a sense unwittingly; still you have lived under the protection of this government long enough to recognize the fact that it is

a government of laws and not of men and that rights guaranteed you by the laws of this republic are only relative, and that others as well as you have rights which must be equally protected by those laws.

The punishment which I shall now impose upon you is imposed as an admonition to you not to again challenge the authority of this court nor to again disobey the rules of the government under which you live; and it is also imposed as an admonition to others who might be minded to do as you have done. It will be greater than it would have been had you shown a more contrite spirit; but much less than the circumstances warrant were I minded to make the punishment fit the crime.

Mr. Sala and Mr. Bellia, I sentence you and each of you to imprisonment in the county jail of Monmouth county for a term of ninety days beginning to-day.

Mr. Pullaro, Mr. Lopresti and Mr. Scarpini, because I believe you to be less guilty than these your leaders, I sentence you and each of you to imprisonment in the county jail of Monmouth county for a period of thirty days.

Sergeant, I now place these respondents in your custody, with instructions to have them conveyed forthwith to the county jail of this county and delivered to the sheriff.

There is one other respondent in this proceeding which was found guilty of contempt of court and upon which sentence of the court must now be passed and that is the respondent the Amalgamated Clothing Workers of America. It is a corporation, and it has been well said that a corporation has no soul; neither has it any personality upon which the punishment of the court may be inflicted. Of course, a corporation always assumes the character of its leaders and officers. The attitude of this corporation toward this court and toward constituted authority generally, is well shown by the remark which its representative made to the witness Clancy in Washington when this controversy was before the federal labor board. That remark indicated that that representative did not recognize any authority in this court, which means that he did not recognize constituted authority in government; that he proposed to be a law unto himself, and that he would

not obey any orders which might be issued in any court unless it pleased him to do so. It is unfortunate for the corporation, but fortunate for him, that he is not here subject to the jurisdiction of this court in this proceeding. The corporation which he represented, however, and for which he spoke, is technically here, and stands convicted of contempt of court. There is but one way to reach that corporation and that is through, figuratively speaking, its pocketbook. The sentence of this court, therefore, is that the Amalgamated Clothing Workers of America, for its contumacious conduct, pay a fine of $1,000 to the State of New Jersey, and process may issue accordingly.

September 14th, 1933.

### ADDENDUM.

Note—An appeal to the court of errors and appeals having been taken by all of the respondents and that appeal having been withdrawn or dismissed by consent of counsel, the individual respondents, some in person and all by counsel, appeared in open court on February 15th, 1934, and petitioned the court for a reconsideration and vacation or modification of the sentences heretofore imposed. After argument by Mr. William J. O'Hagan for the individual respondents, Mr. Harry Weltchek, for the respondent The Amalgamated Clothing Workers of America, and Mr. Merritt Lane, for the prosecution, the court made the following statement:

"In considering the applications for a reconsideration of the sentences imposed upon these respondents at the conclusion of the contempt proceedings, or a vacation of those sentences and the imposition of new or modified sentences, it should be borne in mind that those sentences were imposed as a punishment for acts committed prior to their imposition, and not for contempt subsequent thereto. The only reasons advanced for the vacation or modification of those sentences are grounded in the alleged exemplary conduct of the respondents pending the appeal. The subsequent conduct of these respondents, in my judgment, is the result of the contempt proceedings. This enforced conduct has not purged

them of their contempt, and I believe I have nothing to add to, nor should it be necessary that I add anything to what I said at the time these sentences were imposed. I have thought about this matter very considerably since that time, and I have never been able to bring myself to any conclusion but that if I erred at all in the imposition of the sentences then imposed, it was upon the side of clemency rather than of severity, and there will be no change in the sentences which have already been imposed. You may take an order directing the surrender of these respondents—those of them who are required to surrender to the sheriff, for the serving of the sentences imposed; and with respect to the union respondent, you, Mr. Lane, have not suggested the form of order which you desire, but I suppose it is one of sequestration or something of that kind. What suggestion have you to make as to the form of order which should issue against the Amalgamted?"

Mr. Lane—I should ask for an order that would provide that if it does not pay, then within a certain limited period of time, a receiver be appointed for all of its rights and credits in this jurisdiction, or sequestered, whichever your honor chooses to call it, and that its subsidiary locals in this jurisdiction be restrained from paying out any moneys of any kind under that description.

Mr. Weltchek—Will your honor fix a reasonable time in which counsel can arrange for the payment of the fine? It won't be necessary for a receiver to be appointed.

The court—How much time do you want?

Mr. Weltchek—I think five days.

The court—Then the order will provide that the fine be paid within five days, and if payment be not made within that time, a writ of sequestration may issue.